PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREW HUNTHAUSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUZZFEED, INC., a Delaware corporation dba WWW.BUZZFEED.COM;<br><br>Defendant. | Case No. **'23CV0900 AJB  WVG**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT** |

# I.   INTRODUCTION

Whenever someone watches a video on www.buzzfeed.com (the "Website"), Defendant secretly reports all the viewer's PII, the title watched, and other data to the three largest data harvesters in the world: Tiktok, Google and Facebook. Why? To create custom audiences for immensely profitable targeted advertising.

As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 per violation.

# II.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Upon information and belief, many Class members reside in this District.

3. Defendant is subject to personal jurisdiction because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its online revenues based upon its website interactions with Californians such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

# III.   PARTIES

4. Plaintiff is a resident and citizen of California who resides in this Judicial District. Plaintiff is also a consumer advocate who played and watched a video titled ***"Kiwi Bird"*** in the Spring of 2023 on Defendant's website at the link https://www.buzzfeed.com/alexzakon/kiwis.

5. Defendant is a for-profit corporation with its principal place of business in New York, New York. Defendant is an internet media company with a focus on digital media that offers multiple videos for consumers to view and play via the Website, which is available throughout the United States and in this District.

## IV. FACTUAL ALLEGATIONS

### A. DEFENDANT AND THE VPPA

6. Defendant's business involves monetizing video views. As such, Defendant is a "video tape service provider" under the VPPA because, as part of its business, it delivers "prerecorded video" content or other "similar audio visual materials." 18 U.S.C. § 2710(a)(4).

7. Federal courts have interpreted the term "video tape service provider" to include commercial website owners/operators like Defendant. *See, e.g.*, *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2023 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2023); *Lebakken v. WebMD, LLC*, 2023 WL 16716151, at *1, *3 & n.2 (N.D. Ga. Nov. 4, 2023); *Ambrose v. Boston Globe Media Partners LLC*, 2023 WL 4329373, at *2 (D. Mass. Sept. 19, 2023); *Louth v. NFL Enterprises LLC*, 2023 WL 4130866, at *4 (D.R.I. Sep't 12, 2023); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798-99 (N.D. Cal. 2019); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019); *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.2d 482, 485 n.2 (1st Cir. 2016); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

8. The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

## B.    THE FACEBOOK TRACKING PIXEL

9.     Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1] To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

10.    Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

11.    Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

12.    The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited May 15, 2023).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited May 15, 2023).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https:/www.facebook.com/business/help/20502906038706 (last visited May 15, 2023).
[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited May 15, 2023).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited May 15, 2023).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764    94 (last visited May 15, 2023); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited May 15, 2023).
[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.

13. Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

14. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

**C.  DEFENDANT AND THE FACEBOOK PIXEL.**

15. As set forth below, Defendant discloses information which allows Facebook (and any ordinary person) to identify a user's video-watching behavior.

16. Defendant displays video content that is visible before any scrolling occurs and configured to automatically play when the user visits the website.

**Figure 1**



---

[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited May 15, 2023).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited May 15, 2023).
[10] *Id.*
[11] *Id.*

17. Defendant knowingly hosts the Facebook tracking Pixel and has configured a "PageView event to transmit data whenever a user visits the webpage. This is triggered immediately upon visiting the URL.[12]

**Figure 2**



18. Since the video is configured to play as soon as the page is viewed, this means that triggering the "PageView" event means the user has watched the video.

19. When a visitor watches a video on the website, Defendant knowingly compels a visitor's browser to transmit the c_user cookie to Facebook, along with several other cookies. The c_user cookie contains that visitor's unencrypted Facebook ID:

**Figure 3**

---

[12] This data is derived from a tool created and offered by Facebook.

20. The fr cookie contains an encrypted Facebook ID and browser identifier.[13] The datr cookies also identifies a browser.[14] Facebook, at a minimum, uses the fr cookie to identify particular users.[15]

21. The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[16] As with the fr cookie, Facebook uses the _fbp cookie to identify users.

**Figure 4**

| Name | Value | Domain |
|---|---|---|
| _fbp | fb.1.1683217002716.288462717 | .buzzfeed.com |

22. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

23. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

24. Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what video a user has watched on the Website.[17]

25. Facebook confirms that it matches activity on the Website with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such

---

[13] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited May 15, 2023).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited May 15, 2023).
[15] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited May 15, 2023).
[16] FACEBOOK, CONVERSION API, https://developers.facebook.com/docs/marketingapi/conversions-api/parameters/fbp-and-fbc/ (last visited May 15, 2023).
[17] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited May 15, 2023).

as visiting their apps or websites."[18] The off-site activity report confirms Defendant identifies an individual's video viewing activities.

**D.     DEFENDANT AND GOOGLE ANALYTICS**

26.    Google Analytics is part of the Google Marketing Platform and is available for free to anyone with a Google account. There are two commonly used versions of Google Analytics: Google Analytics 3 (Universal Analytics) and Google Analytics 4 (GA4). Universal Analytics is the legacy version of Google Analytics and is slowly being phased out.[19] GA4 is the latest version of Google Analytics that was launched in 2020.[20] The tools are materially similar in how they collect and transmit website analytics data to Google.[21]

27.    Google confirms that it matches activity on the Website with a user's profile. Google allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites." The off-site activity report confirms Defendant identifies an individual's video viewing activities.

28.    Google Analytics acquires user data from each website visitor using one or more tracking tags installed on the website. A tracking tag is a small piece of JavaScript code that the website owner inserts into the existing code of each page. The Google Analytics tracking tags run in the web browser of each visitor, collecting data and sending it to Google's data collection points.

---

[18] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited May 15, 2023).
[19] ABOUT UNIVERSAL ANALYTICS, https://support.google.com/analytics/answer/2790010?hl=en   (last visited May 2023)
[20] [GA4] INTRODUCING THE NEXT GENERATION OF ANALYTICS, GOOGLE ANALYTICS 4, https://support.google.com/analytics/answer/10089681?hl=en   (last visited May 2023)
[21] UNIVERSAL ANALYTICS VERSUS GOOGLE ANALYTICS 4 DATA, https://support.google.com/analytics/answer/9964640?hl=en&ref_topic=12153646,12153943,2986333,&visit_id=638115536489543614-1150820823&rd=1#zippy=%2Cin-this-article   (last visited May 2023)

29. Website owners control what data the Google Analytics tracking tag will collect, including the website's metadata, along with what pages a visitor views.

30. Website owners control how the Google Analytics tracking tag identifies visitors. The Google Analytics tracking tag is configured to collect "HTTP Headers" and "Event Parameter" data. HTTP headers include data such as IP Address, User Agent String, and Language. HTTP headers are sent to Google from the web browser with every Google Analytics event that is tracked. Event Parameters vary based on the type of event and may include data such as web form interactions, video views, file downloads, page scrolls, web searches, etc.[22]

31. Google Analytics can generate customizable reports to track and visualize data such as the number of users, bounce rates, average session durations, sessions by channel, page views, conversions (such as purchases and adding products to carts), and more. Google Analytics is "designed to work together" with other Google Marketing Platform products to help measure, understand and enhance a website's digital marketing.[23] For example, website owners can easily export data from Google Analytics to Google Marketing products to generate audience segments to facilitate targeted advertising.

E. WWW.BUZZFEED.COM AND GOOGLE ANALYTICS

32. Plaintiff has a Google account and watched a video on the website. Defendants disclosed information that allows Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior.

33. The defendant distributes hosted and embedded video content through their website and has enabled Google Analytics to track users activity.

34. Defendant has configured the video to be played automatically upon accessing the webpage located at https://www.buzzfeed.com/alexzakon/kiwis. Consequently, the user must view the video upon visiting the webpage.

---

[22] [GA4] ENHANCED EVENT MEASUREMENT, https://support.google.com/analytics/answer/9216061 (last visited May 2023)
[23] GOOGLE MARKETING PLATFORM, ABOUT GOOGLE ANALYTICS, https://marketingplatform.google.com/about/analytics/ (last visited May 2023)

**Figure 5**



35. Defendant has established a "PageView" event utilizing Google Analytics on their website. This denotes that each instance a user views a page, a report containing information concerning the viewed page, as well as the _gid cookie employed to recognize the user, is transmitted to Google.

**Figure 6**



36. The _gid cookie that is submitted represents a distinctive identifier number assigned to a Google account user. The Defendant's website stores this data and has it readily available.

**Figure 7**

| Name | Value | Domain |
|---|---|---|
| _gid | GA1.2.1285230044.1683217002 | .buzzfeed.com |
| _gid | GA1.2.728490068.1683215217 | .wayfair.com |

37. Defendant's actions readily permits Google – and any ordinary person – to identify Plaintiff's video-watching behavior.

**F.   TIKTOK, BYTEDANCE, THE PRC AND THE CCP**

38. TikTok describes itself as "the leading destination for short-form mobile video." *See* https://www.tiktok.com/about?lang=en (last downloaded May 2023).  In everyday non-technical language, this means that TikTok is a popular social media application that allows users to create, watch, and share 15-second videos created on mobile devices.

39. TikTok has over 150 million American users and is owned by Chinese technology firm, ByteDance Ltd., which appoints TikTok's executives.  *See* https://abcnews.go.com/Business/wireStory/us-chinese-owned-tiktok-security-threat-98098015 (last downloaded May 2023).

40. The PRC is a Marxist one-party authoritarian political system ruled by the Chinese Communist Party, or "CCP."[24]  The "Chinese government is essentially the shadow of the Communist Party, moving as the party does, and consequently government roles matter far less than party ones."[25]  According to scholar Rush Doshi, the CCP "sits above the state, runs parallel to the state, and is enmeshed in every level of the state."[26]

---

[24] *See* Wang, Peijie (2017), "State Structure and Organs of State Power of China's Governance."
[25] *See* James, Palmer "China Gets a New Premier", Foreign Policy Magazine (last accessed May 2023).
[26] *See* Doshi, Rush "The Long Game: China's Grand Strategy to Displace American Order" (2021).

41. The PRC owns a stake in ByteDance, appoints a portion of ByteDance's board, and has substantial operational control over ByteDance. *See* https://www.reuters.com/technology/bytedance-says-china-unit-holds-local-licences-response-media-report-2021-08-16/ (last downloaded May 2023).

42. To summarize: (1) the CCP controls the PRC; (2) the PRC owns a stake in and controls ByteDance; and (3) ByteDance owns and controls TikTok.

43. The PRC 2017 National Intelligence Law states that "any organization" must assist or cooperate with PRC and CCP state intelligence work, while a separate 2014 Counter-Espionage Law mandates that such organizations must collect evidence for any PRC or CCP investigation upon demand.[27]

44. ByteDance admits that, acting under orders from the PRC and CCP based on the 2017 National Intelligence Law, ByteDance employees in China accessed the private data of U.S. TikTok users, for which is it now being investigated by the United States Department of Justice.[28]

45. Due to concerns about TikTok reporting private citizen activities to the CCP and PRC, the United States government and several other countries are in the process of banning TikTok's use.[29] This is because, in statecraft parlance, the United States government regards TikTok as a "trojan horse" that enables a foreign adversary to spy on unsuspecting American citizens.[30]

---

[27] *See* https://www.lawfareblog.com/beijings-new-national-intelligence-law-defense-offense (last downloaded May 2023).

[28] *See* https://www.npr.org/2023/03/21/1165210054/tiktok-ceo-to-lawmakers-americans-data-not-at-risk (last downloaded May 2023).

[29] *See* https://www.nytimes.com/article/tiktok-ban.html#, *Why Countries Are Trying to Ban TikTok* ("Governments have expressed concerns that TikTok, which is owned by the Chinese company ByteDance, may endanger sensitive user data.") (last downloaded May 2023)

[30] *See* https://www.nytimes.com/2022/12/20/magazine/tiktok-us-china-diplomacy.html (referencing quoted language) (last downloaded May 2023).

## G. THE TIKTOK PIXEL

46. According to TikTok, "The TikTok Pixel is a piece of code that you can place on your website that allows advertisers to share website visitor events with TikTok via browser."[31]

47. The TikTok pixel also tracks and reports to TikTok additional metadata such as Ad/Event information (information about the ad a TikTok user has clicked), Timestamp (the time that the page was viewed), the user's IP Address, and the user's device make, model, operating system, and browser information.[32] All of this information constitutes Personally Identifiable Information, or "PII."

48. Website owners control what data the TikTok Pixel collects and reports back to TikTok by using TikTok Events Manager to choose what "Events" to track and report to TikTok."[33] According to TikTok, "*Events are defined as actions a website visitor takes to achieve a business goal, like adding an item to a cart, filling out a form, or making a purchase. Events help you build marketing audiences, optimize ad delivery, and measure campaign performance.*"[34]

49. Defendant has elected to track and report "Page View" events to TikTok, meaning that every time someone views on a page on Defendant's website, Defendant reports the "event" to TikTok.

50. Why did Defendant install Tiktok Pixel and why does Defendant knowingly report "Page View Events" to Tiktok? As one industry insider reports, its all about the money: "***To take your advertising on TikTok to the next level you need to install the TikTok Pixel on your website.*** **This HTML code allows you to track actions people**

---

[31] See https://ads.tiktok.com/help/article/tiktok-pixel (last downloaded May 2023).
[32] Id. (last downloaded May 2023).
[33] Id. ("TikTok Events Manager is a workspace to manage website pixels and events, and quickly access event data. . . You can select from a list of standard events that best align with your business goal and define how they are tracked.") (last downloaded May 2023).
[34] See https://ads.tiktok.com/help/article/standard-events-parameters?lang=en (last downloaded May 2023).

**take on your website or app after they click on your ad. Additionally, you can retarget them on TikTok in the future."**[35]

## H. DEFENDANT AND THE TIKTOK PIXEL

51. Plaintiff has a TikTok account. As noted above, Plaintiff watched a video on the website.

52. Defendant has configured video on the webpage https://www.buzzfeed.com/alexzakon/kiwis to play upon viewing the page, which triggers the submission of user data to TikTok.

**Figure 8**

| Name | Value | Domain |
|---|---|---|
| _ttp | 7K2sniUsMw0wb2GmIsE9qqr9... | .buzzfeed.com |
| _ttp | 2PKoczZbKk8Ec6RNezdtjrRvs1K | .tiktok.com |
| _ttp | N-WMptSKWIxvwnMXl1QWt0x... | .wayfair.com |

53. The below screenshots shows that Defendant has elected to transmit the "Page View" event to TikTok every time someone clicks on the page https://www.buzzfeed.com/alexzakon/kiwis. As noted above, every time someone clicks on that page, they automatically watch the *"Adorably Odd Kiwi Bird"* video:

**Figure 9**



---

[35] *See* https://patchboard.co/blog/post/tiktok-pixel# (last downloaded May 2023).

54. Through the preceding acts, Defendant notifies TikTok every time someone watches a video on the Website along with data that enables TikTok to know the title of the video watched. In other words, the Defendant discloses to a third-party information identifying a person as having requested or obtained specific video materials or services from Defendant – exactly what VPPA prohibits.

## I. EXPERIENCE OF PLAINTIFF

55. Plaintiff has downloaded Defendant's App on Plaintiff's smart phone. As such, Plaintiff is a "subscriber" and therefore a "consumer" under the VPPA.

56. Plaintiff is also a consumer privacy advocates with dual motivations for playing videos on Defendant' Website. First, Plaintiff is genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law. As a consumer who advance important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

57. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

58. Recently, the Ninth Circuit used unusually strong language to instruct that impermissibly adverse credibility or standing inferences cannot be drawn against a party based on being a "serial litigant." The Ninth Circuit's reasoning was clear: it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, as Plaintiff does here. *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

59. When Plaintiff played the video on the Website, Defendant did exactly what the VPPA prohibits: it disclosed Plaintiff's video viewing habits to three different third parties who harvest private consumer data for profit.

60. As a result, Plaintiff is now bombarded with targeted advertising based upon his video viewing habits whenever plaintiff uses any device connected to the internet.[36]

61. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.

## V. CLASS ALLEGATIONS

62. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on The Website and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

63. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

64. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

a) whether Defendant collected Class member PII;

b) whether Defendant unlawfully disclosed PII; and

---

[36] See https://www.forbes.com/sites/forbestechcouncil/2022/02/24/the-truth-in-user-privacy-and-targeted-ads/?sh=37e99598355e (last downloaded May 2023). ("Targeted ads collect and analyze users' online activity and use this data to inform the type of ads a user is shown. For example, if users often search for tech supplies, they will be shown ads for the latest gadgets. Platforms and websites do this by collecting cookies, location information and mined data.").

c)      whether Defendant's disclosures were committed knowingly.

65.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to play videos, and had PII collected and disclosed by Defendant.

66.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

67.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI.     CAUSE OF ACTION
## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
## 18 U.S.C. § 2710, *et seq.*

68.     Defendant is a "video tape service provider" that creates, hosts, and delivers videos on the Website.  18 U.S.C. § 2710(a)(4) (emphasis added).  Defendant monetizes the videos by collecting and disclosing viewers' PII to the third parties for targeted advertisements.

69.     Plaintiff and members of the Class are "consumers" as set forth above under 18 U.S.C. § 2710(a)(1) (emphasis added).

70.     Plaintiff and the Class members played videos offered by Defendant on the Website.

71.     Defendant knowingly disclosed PII to monetize the videos and to build audiences for targeted advertising.

72.     Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

73. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendant's conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

d. For injunctive relief to stop the illegal conduct;

e. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit;

f. For any and all other relief, at law or equity, that may be appropriate.

Dated: May 16, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff